# In the United States Court of Federal Claims

UNISON SOFTWARE, INC.,

               *Plaintiff,*

   v.

THE UNITED STATES,

               *Defendant.*

No. 23-335C

(Filed: October 25, 2023)

David S. Cohen, Cordatis LLP, Arlington, VA, for plaintiff.

Igor Helman, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Dismissing for Lack of Subject-Matter Jurisdiction and**
**Failure to State a Claim on Which Relief Can Be Granted**

**SILFEN,** *Judge.*

      Unison Software, Inc. develops software that it sells to the government. At various times, different branches of the military have bought software that assists in government contracting. In other words, the military enters into government contracts covering government-contracting software, because the government contracting process is just that complicated. In this case, Unison is concerned that the government may have decided that, going forward, it will buy only the government-contracting software of Unison's competitor, Appian Corporation. Unison alleges that the military made a de facto decision, which was not explicit (or, at least, the explicit decision has not yet come to light) but was evidenced in subsequent events, to standardize its government-contracting-software procurement process by buying only Appian government-contracting software. Such a standardization decision, Unison argues, without conducting a competitive procurement and without considering the competing software products of Unison and other vendors, would violate the Competition in Contracting Act.

      The government has moved to dismiss Unison's amended complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Many of the actions that Unison alleges the government has taken in procuring government-contracting software are subject to a statutory task-order bar, depriving the court of jurisdiction over those particular procurements. Other alleged government actions are so remote from any particular procurement that they do not constitute procurements or proposed procurements, which deprives the court of jurisdiction over those actions; alternatively, Unison does not state a claim on which relief can be granted because

1

there is no relief this court could order that would remedy Unison's concerns. Thus, this court **dismisses** Unison's first amended complaint.

I.     **Background**

Unison is a developer of commercial software that aids the government in contracting in a way that is compliant with the federal acquisition requirements and provides "acquisition lifecycle management and contract writing software support."[1] ECF No. 23 at 2 [¶4].

Appian has a proprietary programming language that it licenses to the federal government for use in contract-writing software. Hearing Tr. 11:15-12:18, Sept. 19, 2023; ECF No. 23 at 1 [¶1]. Currently, Appian's programming language is used in several military branches, including in the Air Force's contract-writing software, "the Army Contract Writing System, … and the Navy Electronic Procurement System." ECF No. 23 at 1 [¶1].

Unison cites multiple public statements and older procurements in its complaint but relies primarily on three recent, concrete military procurements: (1) a request for quote issued by the Defense Logistics Agency (DLA) in December 2022; (2) a Navy solicitation for a contract-writing systems portfolio coordinator; and (3) an Army solicitation for Appian licenses for contract-writing systems. ECF No. 23 at 17 [¶28]; ECF No. 33 at 9-11; ECF No. 33 at 11-13. Unison argues that these three procurements, along with other actions by the military in connection with these procurements, indicate that the military intends to procure only Appian contract-writing software in the future.

With respect to the first procurement, two years before DLA issued its December 2022 request for quote, Under Secretary of Defense for Acquisition and Sustainment Ellen Lord issued a memo directing DLA to develop a set of "requirements for the 4th Estate contract writing capability." ECF No. 1-3 at 1. (The 4th Estate is all branches of the Department of Defense that are not the military services. This includes the Defense Contract Audit Agency, the Defense Contract Management Agency, the Defense Finance and Accounting Services, the Defense Information Systems Agency, and DLA, among others. *See, e.g.*, https://4edacm.dau.edu/4e_agencies.html.) The Lord memo stated that the new contract-writing system would "[l]everage the government-developed contract writing solution set deployed by the Air Force for applicable capabilities." ECF No. 1-3 at 1. The Air Force's contract-writing software, both then and now, relies on Appian's programming language. Hearing Tr. 11:15-12:11, Sept. 19, 2023; ECF No. 23 at 3, 5 [¶¶5, 9].

In December 2022, DLA then issued its request for quote, solicitation number SP4709-23-Q-1002 (the 1002 solicitation). The 1002 solicitation was issued under an existing contract between the government and designated vendors, known as a multiple awardee, indefinite delivery, indefinite quantity technology services contract. ECF No. 23 at 17 [¶28]; ECF No. 23-20. In other words, the government had already entered into a contract with the designated vendors to buy an indefinite volume of technology services in the future, and it was seeking to make good on that contract by requesting some specific services. The 1002 request was designated a "task order" under the existing contract. The task order recited the same objectives listed in the Lord

---

[1] At the motion-to-dismiss stage, the court accepts Unison's undisputed allegations as true. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

memorandum. ECF No. 23-20, Performance Work Statement at 1. Unison was not a party to the existing contract and thus was not eligible to be awarded the task order.

Unison protested at the Government Accountability Office (GAO), arguing that the 1002 solicitation (1) exceeded the scope of the existing technology services contract; (2) was overly restrictive because it required the use of specific software; and (3) inaccurately calculated the estimated value of the solicitation. ECF No. 23-27 at 1. The government amended the solicitation, addressing Unison's concern about the scope of the existing contract. GAO dismissed the protest. GAO reasoned that DLA had already addressed the issue of the scope and that Unison was not a party to the existing technology services contract. As a non-party, GAO explained, Unison was not eligible to compete for the task order and was therefore not an interested party in a position under the bid protest regulations to bring such a challenge. ECF No. 23-27 at 2. After the GAO dismissal, Unison filed its initial complaint here, asking this court to enjoin the government from proceeding with the 1002 solicitation. ECF No. 1 at 29.

The government moved to dismiss the initial complaint, arguing that the 1002 solicitation was a task order and that this court does not have jurisdiction to address bid protests over most task orders, including the 1002 task order. Unison then filed an amended complaint that addressed other military procurement conduct, particularly the Navy and Army solicitations, and broadened its claims to allege a broader military-wide scheme to buy only Appian contract-writing software. ECF No. 23 at 1 [¶1].

The Navy solicitation, like the DLA 1002 solicitation, is also a task order. Hearing Tr. 64:2-18, Sept. 19, 2023 (counsel for Unison agreeing that it is a task order); ECF No. 33-1, Performance Work Statement at 36 ("this task order does not require Earned Value Management … implementation"). It requests a contract-writing systems portfolio coordinator. ECF No. 33 at 10-11. Before the Navy's task order solicitation, the Navy put out a request for information, explaining that it intended to replace old legacy procurement systems with a new contract-writing system. ECF No. 23 at 8-9 [¶15]. In its request for information, the Navy described the desired contract-writing system as "reusing" the Air Force's contract-writing software, which is based on Appian technology. ECF No. 33 at 10; ECF No. 23-14, Request for Information at 1. The Navy's solicitation lists Appian as one of the "languages and technologies" that is "[r]elevant" to its new desired system. ECF No. 33-1 at 4.

The third solicitation Unison raises is an Army solicitation. The Army solicitation at issue requested "Appian flatt [sic] licenses in support of Army contract writing system effort" and was issued in February 2023. ECF No. 33-2 at 1. The Army's solicitation is a "delivery order" type contract. ECF No. 33-2 at 4. In April 2023, a presentation by Army personnel stated a plan to "leverage[e] the Air Force [contract-writing] software" to meet the Army's contract-writing software needs. ECF No. 23-7 at 9. According to Unison, the Army's public remarks and solicitation for Appian licenses in particular demonstrate "an Army decision to standardize its contract writing platform on" Appian's proprietary programming language. ECF No. 33 at 12-13.

Based on these three military solicitations, and the statements about them beforehand and afterward, Unison alleges that the military has, either explicitly or implicitly, decided to procure only Appian contract-writing software, violating the Competition in Contracting Act (CICA).

3

**II.     Discussion**

Under rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citation omitted). Even if not disputed by a party, "[s]ubject-matter jurisdiction may be challenged at any time … by the court *sua sponte*." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

A complaint should be dismissed under Rule 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). To avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, Rule 12(b)(6) ensures that the plaintiff has a claim for which this court can grant appropriate relief. In reviewing a motion to dismiss under Rule 12(b)(6), the court will accept well-pleaded factual allegations as true and draw all reasonable inferences in the claimant's favor. *Lindsay*, 295 F.3d at 1257.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b). The court can grant "any relief that the court considers proper," including injunctive relief. *Id*. Monetary relief for bid protests is "limited to bid preparation and proposed costs." *Id*. CICA requires agencies to "obtain full and open competition through the use of competitive procedures" when procuring property or services. 41 U.S.C. § 3301. But CICA allows non-competitive, sole-source contracts in certain circumstances, as long as the contracting officer provides written justification for skipping the competitive process. 41 U.S.C. § 3304(e). A sole-source award decision is reviewable in this court under the Tucker Act. *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001).

With the Federal Acquisition Streamlining Act (FASA), Congress encouraged the federal government to contract for and use commercial goods instead of "expensive, specially designed products." 140 Cong. Rec. 24869 (1994), 1994 WL 513434. FASA requires agencies to buy commercially available technology, to the maximum extent practicable. 10 U.S.C. § 3453. Agencies must conduct market research to "determine whether there are commercial services or commercial products" that would meet, or could be modified to meet, the government's needs. 10 U.S.C. § 3453.

4

A. **The court does not have jurisdiction over bid protests of task or delivery orders**

This court lacks jurisdiction to hear Unison's claims about specific military procurements because each of the challenged procurements is "in connection with" a task order or delivery order.

While this court has jurisdiction over bid protests in general (28 U.S.C. § 1491(b)), Congress has, through FASA, expressly limited the court's bid-protest jurisdiction by prohibiting protests "in connection with the issuance or proposed issuance of a task or delivery order." 10 U.S.C. § 3406(f); *22nd Century Techs, Inc. v. United States*, 57 F.4th 993, 998 (Fed. Cir. 2023). The Federal Circuit has explained that this task- and delivery-order bar is jurisdictional. *22nd Century*, 57 F.4th at 999. Thus, if a complaint is in connection with a task or delivery order, the court cannot hear it.

For procurements by the military, there are two narrow exceptions: (1) when the order value is more than $25 million; or (2) when the order "increases the scope, period or maximum value of the contract under which the order is issued." 10 U.S.C. § 3406(f). If no exception applies, the FASA task-order bar "effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct." *22nd Century*, 57 F.4th at 998 (quotation marks omitted).

The three specific procurements that Unison primarily relies on are all task or delivery orders and are all subject to the FASA task-order bar.

Unison concedes that DLA's 1002 solicitation is a task order. ECF No. 33 at 15 ("the pending DLA task order procurement"). Unison does not contend that the 1002 task order falls into one of the narrow exceptions to the FASA task-order bar. The government asserts that the task order does not increase the scope, period, or maximum value of the contract and that the value is under $25 million (ECF No. 13 at 11-12 n.4), and Unison does not challenge those assertions. While Unison's protest to GAO alleged that the 1002 task order increased the period of the existing contract, DLA revised its solicitation, mooting that argument. ECF No. 23-27 at 1-2. None of the statutory exceptions applies to the 1002 task order.

Likewise, Unison concedes that the Navy's solicitation is a task order. Hearing Tr. 64:2-18, Sept. 19, 2023; *see also* ECF No. 33-1, Performance Work Statement at 36. And the Army's solicitation is explicitly a delivery order. ECF No. 33-2 at 4 ("Contract Type – Delivery Order"). The other DLA solicitations (SP4709-21-Q-1053 and No. SP4701-21-Q-1000) mentioned in the amended complaint are also task orders. ECF No. 23 at 16-18 [¶¶25-28]; ECF No. 23-19 at 2-4 (characterizing the solicitations as "task order solicitation"). Each of the specific solicitations Unison complains about is a task or delivery order, and Unison has not shown that any exception applies.

Unison's concerns about government actions surrounding those solicitations are also "in connection with" a task or delivery order, depriving this court of jurisdiction over those claims. The Federal Circuit has determined that a government action is "in connection with" a task order if that action is "directly and causally connected" to the task order. *SRA International, Inc v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014) (holding that a conflict waiver was "directly

5

and causally connected" to a task order because the waiver was necessary for the government to proceed with the task order). Unison argues that the Lord memo both (1) indicates that the 1002 solicitation will ultimately be filled using Appian software and (2) is evidence of a broader underlying decision to use only Appian software for military contracting going forward. Even if both are true, any decision in the Lord memo to buy software is directly and causally connected to the solicitations that carry out that decision. The only solicitations carrying out that decision that Unison can point to are task and delivery orders. Thus, even if the Lord memo shows a broader scheme by the military to limit itself to Appian software, it is beyond this court's jurisdiction to remedy that scheme as applied to resulting task and delivery orders.

In fact, the relief that Unison seeks from this court includes enjoining multiple task and delivery orders for Appian software. Hearing Tr. 77:1-12, Sept. 19, 2023 (requesting that the court "enjoin[] the implementation of a standardization decision, … whatever procurement activity flows from those standardization decisions"); ECF No. 23 at 34 (requesting that the court "prohibit[] the Department of Defense and its components … from proceeding with … any other solicitation, contract, agreement, or procurement" for Appian software). If the requested relief is to stop a task or delivery order, that relief is unavailable. As this court explained in *Percipient.ai, Inc. v. United States*, No. 23-28C, 2023 WL 3563093, *3 (Fed. Cl. May 17, 2023), the relief a plaintiff requests is relevant to deciding whether the FASA task-order bar applies. If Unison "prevailed on the merits, any meaningful relief would require this court to partially suspend or discontinue performance under that task order, which further evidences the connection between the challenge and the task order." *Id*. As the Federal Circuit has similarly explained, when the relief sought is the rescission of a task order, that requested relief "supports the conclusion that [a] protest is actually with the issuance of the task order" rather than another government action. *SRA*, 766 F.3d at 1414.

Unison argues that its complaint is not about any specific solicitation but instead is about a broader scheme by the military to procure only Appian software going forward. As Unison explained at oral argument, "the task order, in our view at least, is inseparable from … everything else that is going on." Hearing Tr. 6:16-19, Sept. 19, 2023. The alleged broader scheme is addressed below, but the remedy Unison seeks is, in part, an injunction preventing the military from going forward with its pending solicitations. That proposed remedy—stopping task and delivery orders from going forward—shows that the conduct that Unison is concerned with is "in connection with" a task or delivery order.

Unison argues that this court has enjoined task orders when they evidence a broader scheme to improperly rely on a single source. Unison relies on this court's decisions in *McAfee, Inc. v United States*, 111 Fed. Cl. 696 (2013); *Savantage Financial Servs., Inc. v United States*, 81 Fed. Cl. 300 (2008); and *Tolliver Group, Inc. v. United States*, 151 Fed. Cl. 70 (2020). Those three cases did involve injunctions that prohibited task orders from going forward, but they do not help Unison as much as Unison would like. In *McAfee* and *Savantage,* the government had explicitly made standardization decisions, publicizing a choice of a particular brand using a brand-name justification. *McAfee*, 111 Fed. Cl. at 705-06; *Savantage*, 81 Fed. Cl. at 302. And in those cases, the decision had effects beyond just a task order. *See McAfee*, 111 Fed. Cl. at 707 (The underlying standardization decision "is not tied to any single solicitation or delivery order, but encompasses the whole of the Air Force's procurement of a new network security structure."). Here, on the other hand, there is no such explicit decision or broader effects; the Lord memo, which comes the closest, does not name any sole source and applies only to the DLA and, at least so far, only to task orders.

In *Tolliver,* the government cancelled a procurement set aside for small businesses. There is no similar, discrete decision here. Instead, Unison alleges that "the standardization to Appian … involves multiple decisions that are manifested through different procurement activities by the Army, Navy, Air Force, and DLA" (ECF No. 33 at 20) and points to a mix of task orders, delivery orders, a memo, requests for information, and public presentation materials.

Furthermore, the Federal Circuit has never affirmed the reasoning in *McAfee*, *Savantage*, or *Tolliver*, and in fact has viewed the task-order bar broadly, indicating that it might not agree that this court can address a broad scheme—even if improper—that is manifested only in task or delivery orders. *See SRA*, 766 F.3d at 1414; *22nd Century*, 57 F.4th at 998. In fact, in *22nd Century*, the Federal Circuit disagreed with *Tolliver's* narrowing of the task-order bar, holding that this court was barred from reviewing an Army decision that a task order awardee was not a small business. The Federal Circuit noted that its own decision in *SRA* foreclosed an argument that relied on *Tolliver*. 57 F.4th at 999 n.3. The Federal Circuit did not explicitly address all of the rationales in *Tolliver*. But the Federal Circuit's treatment of *Tolliver* suggests that a plaintiff cannot get around the task-order bar by simply pointing to an allegedly problematic decision abstracted from the task-order-solicitation process.

Unison both asks the court to enjoin several task orders and also argues that the alleged standardization decision is so disconnected from the task orders as to be exempt from the FASA task-order bar. ECF No. 15 at 20 (arguing that "there is no connection (direct or causal) between [the Department of Defense's] decision to standardize its contract writing software by using the Appian … software solution and the subsequent decision to procure the software solution … through a task order procurement"). Because task and delivery orders are the only solicitations that Unison has pointed to in arguing that the military is carrying out procurements to implement the alleged standardization decision, and because the relief Unison seeks is to stop those orders, the protest is "in connection with" those task or delivery orders. This court does not have jurisdiction over the military's decisions to issue task and delivery orders, nor does it have jurisdiction to enjoin those task and delivery orders in this case.

  **B.**  **The other government actions recited in Unison's amended complaint are not reviewable procurements or proposed procurements; the complaint also fails to state a claim on which relief can be granted**

The government actions beyond task and delivery orders that are recited in Unison's amended complaint, including those explicitly described, the unknown actions that Unison believes the government took, and the alleged de facto standardization decision, are not procurements or proposed procurements that can be challenged in this court. The fact that they are not procurements or proposed procurements deprives this court of subject-matter jurisdiction; without any viable relief, those claims must also be dismissed under Rule 12(b)(6).

This court "shall have jurisdiction to render judgment on an action by an interested party objecting to … any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. 1491(b). The statutory term procurement "includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008) (adopting the definition of procurement

from 41 U.S.C. § 403(2)). If the challenged action is not a procurement or a proposed procurement, this court lacks jurisdiction. *AgustaWestland N. Am. Inc v. United States*, 880 F.3d 1326, 1330-31 (Fed. Cir. 2018); *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 738 (2014); *Int'l Genomics Consortium v. United States*, 104 Fed. Cl. 669, 677-678 (2012).

Unison alleges that there are multiple procurements at issue, including some that have not yet come to light. Hearing Tr. 55:2-12, Sept. 19, 2023 ("right now, we don't have all those procurements"). As discussed above, the task-order bar applies to many of the procurements mentioned in the amended complaint, including the actions in connection with DLA's task orders, the Navy's task order, and the Army's delivery order. ECF No. 23 at 16-18; ECF No. 33 at 9-11; ECF No. 33 at 11-13.

Outside of the government actions made in connection with those task or delivery orders, there is no action in Unison's complaint that rises to the level of a procurement or proposed procurement. The definition of procurement includes "beginning the process for determining a need." 41 U.S.C. § 403(2). While broad, the definition is not limitless. In *AgustaWestland*, for example, the Federal Circuit held that the government's choice of a specific model of helicopter with the intent of ultimately replacing its fleet of helicopters with that model was not a procurement or proposed procurement because it did not "direct or even discuss the procurement" of that helicopter model, instead intending to use existing government assets. 880 F.3d at 1330. This court has likewise held that an agency's internal considerations "whether to fulfill a requirement by adding work to an existing contract or, instead, by procuring the good or service directly" does not begin the process of determining a need. *Int'l Genomics*, 104 Fed. Cl. at 676.

Here, Unison has pointed to statements by military officers and employees, in the Lord memo and in presentations, implying that the military would like to buy more Appian contract-writing software. Those statements, like the statements in *AgustaWestland*, are not proposed procurements because they are not sufficiently concrete or connected to an existing or future procurement to be actionable.

Unison argues that the Lord memo's "directives could not be met without the acquisition of products and services." ECF No. 33 at 8. The government argues that the Lord memo "does not discuss the procurement of any particular software, but only contemplated using existing agency assets." ECF No. 29 at 19. While the Lord memo directs military agencies to "leverage the government-developed contract writing solution set" and to "budget for necessary licenses for their workforces" (ECF No. 1-3 at 1-2), it does not specify or mandate any concrete procurement actions the agencies should take. And there is no procurement—outside barred task and delivery orders—that Unison can point to to show that the government is actually procuring or planning to procure more contract-writing software.

Rather than beginning the process for determining a need for external purchases, the Lord memo's directives are more like the program management decisions of *International Genomics*. In *International Genomics*, the government, "primarily for budget and efficiency reasons, combined features of [one program] with features of two other programs … and then gave the management of the entire program" to a contractor. 104 Fed. Cl. at 674. That was not conducting a procurement. 104 Fed. Cl. at 677-678. Likewise, the Lord memorandum—outside its connection

8

to the resulting task order—is not a procurement or proposed procurement over which this court has jurisdiction.

      The military's statements in public presentations also do not show a military procurement or proposed procurement. Unison relies on those presentations to support its allegations of a broad scheme to buy Appian software, including statements from an April 2023 Department of Defense conference. *See, e.g.,* ECF No. 23 at 7, 10 [¶¶13, 17]. Those statements do not show that the military has procured or proposed to procure contract-writing software. As in *International Genomics*, "determining a need" cannot be read so broadly that it includes "discussions that precede such a decision, no matter how laconic or informal." 104 Fed. Cl. at 676. Here, the Army said in a presentation that its contract-writing program "has pivoted to a portfolio approach that leverages existing technologies and maximizes share-ability and reuse across the [Department of Defense]." ECF No. 23 at 7-8 [¶¶13-14]. That statement does not reasonably imply that the Army is determining a need for more contract-writing software, and the Army certainly has not stated a need to use only Appian contract-writing software. In contrast, DLA's 1002 task order spans 64 pages and describes six distinct tasks it intends to fulfill. ECF No. 23-20, Performance Work Statement, at 3. The public presentations are the kind of discussions that precede decisions and are not evidence of a proposed procurement under this court's law.[2]

      In addition to identifying multiple alleged procurements in the amended complaint, Unison also contends that a single Defense-Department-wide decision to use Appian's contract-writing software likely occurred. Hearing Tr. 68:8-25, Sept. 19, 2023 ("I believe that it would be extraordinarily coincidental if procurement activities responsible for hundreds of thousands of people and millions and millions of dollars to get this thing done just happened on their own without any coordination or instruction to go down the same road"). But to be a procurement or proposed procurement, such that this court would have jurisdiction to review it, the alleged department-wide decision must amount to more than informal discussions. *International Genomics*, 104 Fed. Cl. at 676. Here, there are no documents showing that such a decision exists, much less that it would amount to a procurement.

      In *VFA*, when the government "did not issue [a request for information], did not receive information from vendors, and did not plan to award any contract," there was no procurement. 118 Fed. Cl. at 741. Likewise, in *Distributed Solutions*, the Federal Circuit examined the government actions that stemmed from a request for information. 539 F.3d at 1346. The resulting information was used to determine the scope of services required by the government, which were then added to an already-awarded contract. *Id*. Unison fails to identify a single department-wide request for information or similar formalized demonstration of the alleged department-wide decision.

      Evidence that could overcome these issues would not result from an administrative record "moving backwards up the decision chain and … the documents that led to this result," as Unison

---

[2] The Army's presentation further explained that it planned to use the Air Force's software, which is based on Appian's technology, for only 36 percent of its needs and listed other software to meet the rest of its needs. ECF No. 23-7 at 9. As the government points out (ECF No. 34 at 8), a decision to use a particular product for only a minority of the government's needs would hardly be a standardization decision, even if the Army had already made such a decision and proposed such a procurement.

requests. Hearing Tr. 74:3-23, Sept. 19, 2023. The further back from the actual procurement decisions—the task or delivery orders or any other solicitations—the more remote such a decision is from an actual procurement, and the more unlikely it is to be a procurement or proposed procurement. Instead, this retrospective analysis could only uncover the informal, preliminary types of discussions that this court cannot review. The court will not allow Unison to go on a fishing expedition to uncover an alleged department-wide decision that it believes might exist, without any evidence that it either exists or is being carried out in actual, protestable procurements. *Monarch Assur. P.L.C. v. United States*, 244 F.3d 1356, 1365 (Fed. Cir. 2001) ("the trial court is not expected to, nor should it, simply allow plaintiffs to embark on a wide-ranging fishing expedition in hopes that there may be gold out there somewhere, or worse, in hopes that the Government will get tired of litigating and settle an otherwise unprovable case").

Unison compares this case to *Google, Inc. v. United States*, 95 Fed. Cl. 661 (2011) (ECF No. 33 at 18). In *Google*, the government announced a decision to consolidate its email services into a single, brand-name system. This court held that the announcement was a reviewable proposed procurement. But unlike here, the proposed procurement in *Google* was specific and well documented and was part of a plan for an actual procurement that was not a task order. *See* ECF No. 33 at 18 (admitting that "*Google* does not involve a task order bar"). The court in *Google* did not actually analyze the boundaries of the term "procurement." And the decision describes the government's "market research discussions" with possible vendors, the issuance of an acquisition plan listing various phases of "procurement activity," and a resulting request for quotations, which Google protested. 95 Fed. Cl. at 665-671. Here, Unison points to no such formal process, and no procurement or proposed procurement that arose from the process.

For the same reasons that this court lacks jurisdiction—that, outside the barred task and delivery orders, there is no procurement or proposed procurement—Unison's complaint also fails to state a claim on which this court could grant any relief. *See* RCFC 12(b)(6). Unison asks this court to prohibit the government from "proceeding with … any other solicitation, contract, agreement or procurement for Appian … software or services relating thereto for electronic contract writing … without first complying with applicable statutory and regulatory requirements." ECF No. 23 at 34 [¶55]. In short, beyond enjoining specific task and delivery orders, which the court in this case cannot do, Unison is asking the court to broadly direct the government to follow the law.

But a general grievance that the government is not following the law, without more, is not the kind of case or controversy that this court can address. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992); *see also Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("Article III's requirement that a party invoking the jurisdiction of a federal court seek relief for a personal, particularized injury serves vital interests going to the role of the Judiciary in the federal system of separated powers."); *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1351 n.7 (Fed. Cir. 2015) ("Although the Court of Federal Claims is an Article I tribunal, it generally adheres to traditional justiciability standards applicable to courts established under Article III."). It must be likely that the injury to Unison would be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-561. Telling the government to follow the law, which the government is already obligated to do, would not redress any injury and would not provide Unison with any relief it does not already have.

10

### III. Conclusion

For the reasons stated above, this Court **grants** the government's motion to dismiss. The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

                                                    <u>s/ Molly R. Silfen</u>
                                                    MOLLY R. SILFEN
                                                    Judge